Estate of Alma W. Liebmann, Alfred Liebmann, Executor v. Commissioner.
Estate of Liebmann v. Commissioner
Docket No. 457.
United States Tax Court
1944 Tax Ct. Memo LEXIS 302; 3 T.C.M. (CCH) 303; T.C.M. (RIA) 44110; April 4, 1944
*302 George E. Cleary, Esq., 31 Nassau St., New York, N.Y., for the petitioner. F. S. Gettle, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The respondent has determined a deficiency of $84,001.74 in the estate tax of Alma W. Liebmann, deceased. Most of the deficiency results from the inclusion in the gross estate of the principal of a trust which decedent created in 1917 for the benefit of her husband for life with remainder to their two minor children, and an additional amount which decedent contributed in 1933 to a like trust created by her husband at the same time of which she was a life beneficiary. [The Facts] The facts have been stipulated and are in substance as follows: Decedent died July 15, 1938. The estate tax return was filed on behalf of the estate with the collector of internal revenue for the third district of New York. On March 6, 1917, decedent and her husband, Alfred Liebmann, created separate trusts, each for the benefit of the other for life with remainder over to their two children. The corpus of each trust was said to consist of 150 shares of stock of S. Liebmann's Sons Brewing Co. and 3,000 shares of United Verde Extension Mining Co. *303 However, in the trust created by decedent only 2,975 shares of the United Verde Extension Mining Co. stock were transferred to the trustees. That stock had a value on March 6, 1917, of $38.50 per share. The S. Liebmann's Sons Brewing Co. stock had a value at that time of $1,216.12 per share. On September 29, 1933, decedent transferred to each of the trust 750 shares of McIntyre Porcupine Mines, Ltd. stock. The aggregate value of the shares so transferred to each trust was $32,906.35. The 750 shares transferred to the trust created by decedent's husband were sold by the trustee on December 27, 1933, for $29,430.60. In December 1935 decedent's husband transferred other shares of stock to the trust which he had created of an aggregate value of nearly $50,000. At the date of her death, July 15, 1938, the net worth of the trust which decedent had created was $241,294.21. The net worth on that date of the trust which her husband had created was $320,950.73. The estate tax return filed on behalf of decedent's estate showed a net estate for basic tax of $353,511.61, exclusive of any of the corpus of the trusts above described. In his deficiency notice the respondent added to the value *304 of the net estate reported as "Transfers during decedent's life" $278,012.61, representing the value of the corpus of the trust which decedent created on March 6, 1917, and $32,812.50, representing the value of the 750 shares of stock of McIntyre Porcupine Mines, Ltd. which she transferred to the other trust on September 29, 1933. Respondent alleges affirmatively in his answer filed in this proceeding that there should be included in decedent's estate as a transfer intended to take effect in possession or enjoyment at or after death the value at the date of her death of the corpus of the trust which her husband created, and of which she was life beneficiary, to the extent of the portion attributable to the reciprocal contributions. He asks that the deficiency be increased accordingly. In his brief the respondent urges the inclusion of the corpus of the trust which decedent's husband created in decedent's gross estate as his "primary position." He argues in the alternative that the value at the date of decedent's death of the corpus of the trust which decedent herself created, reduced by the value of her husband's life estate, should be included in her gross estate as a transfer *305 intended to take effect in possession or enjoyment at or after death, or one in which there was a possibility that the corpus would revert to the decedent or her estate by operation of law. These contentions are predicated upon the decision of the Supreme Court in . Even if we should find, as the respondent requests us to do, that the trusts were reciprocal to the extent of the offsetting contributions which decedent and her husband made to them (but on this point compare ) and that for estate tax purposes decedent should be regarded as the grantor of the trust which her husband created (see ; affd. ; certiorari denied, ; ; , it would not follow that the corpus of the trust for this reason must be included in decedent's gross estate. The trusts *306 here were created prior to March 3, 1931, the effective date of the Joint Resolution amending section 302(c) of the Revenue Act of 1926 to include in the gross estate of a decedent the corpus of a trust in which as grantor he retained a life interest. In such a trust the mere reservation of a life estate does not require the corpus to be included in the grantor's gross estate. ; ; ; affd. sub nominee . There was no expressed reservation of any interest in the corpus of either trust by the decedent or her husband. The assets of both trusts were to be distributed to the grantors' son and daughter or the one last surviving, or their issue. The gifts in trust were absolute. Under such facts the doctrine of the Hallock case is not applicable. See , and cases there cited. See also . *307 It is admitted on behalf of the decedent's estate that there should be included in the gross estate the value at the time of her death of the assets which she transferred on September 29, 1933, to the trust which her husband created and of which she was life beneficiary. Those assets, which consisted of 750 shares of McIntyre Porcupine Mines, Ltd., were sold by the trustees prior to decedent's death for $29,430.60. That amount represented the value of such assets (as converted by the trustees) at the date of decedent's death. It is therefore the amount which should be included in decedent's gross estate. See No part of the other assets of either of the trusts, we think, is included in decedent's gross estate. Decision will be entered under Rule 50.